**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID DICKSON,**

                **Plaintiff,**                      **1:04-CV-1296**

     **vs.**                                              **(NAM/RFT)**

**COMMISSIONER OF SOCIAL SECURITY,**

               **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Erwin, McCane & Daly | Thomas C. Erwin, Esq. |
| 23 Elk Street | |
| Albany, New York 12207 | |
| *Attorney for Plaintiff* | |
| | |
| Glenn T. Suddaby | William H. Pease |
| United States Attorney for the | Assistant United States Attorney |
| Northern District of New York | |
| P.O. Box 7198 | |
| 100 S. Clinton Street | |
| Syracuse, New York 13261-7198 | |
| and | |
| Office of General Counsel | Barbara L. Spivak |
| Social Security Administration | Chief Counsel, Region II |
| 26 Federal Plaza | |
| New York, New York 10278 | Tomasina DiGrigoli |
| *Attorneys for Defendant* | Senior Attorney |

**Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

       Plaintiff David Dickson brings the above-captioned action pursuant to 42 U.S.C. § 405(g)

and 1383(c)(3) of the Social Security Act, seeking review of the Commissioner of Social

Security's decision to deny his applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  The Court, having considered plaintiff's contentions and

the entire administrative record, finds that the ALJ erred in finding that plaintiff was not disabled.

Accordingly, the decision must be reversed and remanded.

**II.    BACKGROUND**

Plaintiff was born in 1957; at the time of the administrative hearing held in this matter on

June 3, 2003, plaintiff was forty-six years old.  Administrative Transcript at pp. 48, 263.[1]

Plaintiff is single and has no children.  AT 263.  He lives in his mother's house with his mother

and brothers.  *Id.*

Plaintiff completed one year of college.  AT 70, 264.  He previously worked as an

assistant manager at a fast food restaurant and as a manger of Cumberland Farms.  AT 265.  He

also performed data entry on a seasonal basis apparently for approximately seven years.  AT 65,

268.

Plaintiff alleges that he is disabled due to sarcoidosis,[2] a damaged disc, migraine

headaches, arthritis, asthma, and seizures.  AT 16, 64, 81.  He also claims that he suffers from

auditory hallucinations.  AT 270-71.  He claims that he became unable to work due to these

conditions on July 24, 2001.  AT 48.

**A.    Physical Condition**

---

[1] Portions of the administrative transcript, Dkt. No. 6, filed by the Commissioner together with his answer, will be cited herein as "AT __."

[2] Sarcoidosis is a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles (q.v.) in almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet. *Dorland's Illustrated Medical Dictionary* 1599 (29th ed. 2000).

From February 16, 1996 to June 28, 1999, plaintiff was treated for, *inter alia*, low back pain by Arvinder Singh, M.D. and Abraham Rivera, M.D., pain management specialists.[3]  AT 100-21.  He was diagnosed as suffering from posterior joint syndrome of the lumbar spine and treated with, *inter alia*, medications, hydrotherapy, and radio frequency denervation.  *Id.*

As of October 19, 1999, plaintiff was treating with Nathan Mitkoff, M.D.  AT 125. Plaintiff complained of, *inter alia*, shoulder pain, right arm pain, shortness of breath, pain on his left side, seizures, and syncopal.  AT 127, 191, 195-200.  Dr. Mitkoff diagnosed plaintiff as suffering from, *inter alia*, sarcoidosis, seizures, pain, and osteoporosis.  AT 126-29, 196-200.  He prescribed numerous medications, such as Prednisone.[4]  AT 201-05.

On December 10, 2001, plaintiff underwent an orthopedic examination at the request of the agency by Amelita Balagtas, M.D.  AT 154-56.  During the examination, plaintiff's abilities to perform forward flexion and straight leg raising were limited by lower back pain.  AT 155.  An x-ray of plaintiff's lumbar sacral spine revealed that the disc space at L5-S1 was "severely narrowed," and showed "mild degenerative 'lipping.'"  AT 157.  Dr. Balagtas diagnosed plaintiff as suffering from lower back pain and concluded that plaintiff would have "some limitations" in performing bending, lifting, prolonged sitting, and prolonged standing.  AT 156.

On February 6, 2002, plaintiff underwent an internist examination at the request of the agency by Jogendra Chhabra, M.D.  AT 171-79.  During the examination, plaintiff's lumbar spine

---

[3]  Progress notes from these sources also contain two treatment notes from Diagnostic & Interventional Pain Management and Rehabilitation Services dated August 2, 2001 and September 27, 2001.  AT 97-99.  The former note was completed by an unknown individual.  AT 98-99.  The latter note indicates that plaintiff was a "no show."  AT 97.

[4]  Prednisone is a steroid drug that is used to reduce inflammation and alleviate symptoms in a variety of disorders, including rheumatoid arthritis and severe cases of asthma.  *The PDR Pocket Guide to Prescription Drugs* 1132 (7th ed. 2005) (hereinafter "*PDR Pocket Guide*").  It may cause euphoria, insomnia, mood changes, personality changes, psychotic behavior, or severe depression.  *Id.* at 1133.  It may worsen any existing emotional instability.  *Id.*

showed a limited range-of-motion, but there was no spasm or point tenderness.  AT 174.  Straight leg raising was positive bilaterally.  *Id.*  Results of pulmonary function testing showed a "mild restriction."  AT 175, 176.  Dr. Chhabra concluded that plaintiff has no limitations with personal grooming, speech, vision, hearing, or with the use of his upper extremities for fine and gross motor activities.  AT 175.  Dr. Chhabra found "mild" limitations performing household activities, and "moderate" limitations with exertional activities, such as walking distances, climbing stairs, lifting, and bending.  *Id.*  Dr. Chhabra also opined that due to plaintiff's history of seizures, plaintiff "needs to avoid situations like water bodies, heights, and machinery, and maybe driving."  *Id.*

In the interim, on February 28, 2003, plaintiff saw Natalia E. Veselova, M.D., a rheumatologist.  AT 218-20.  Dr. Veselova opined that "the main issue" for plaintiff appears to be pain management rather than management of his sarcoidosis.  AT 219.  She recommended that plaintiff see Dr. Singh, taper his dosage of Prednisone, and continue taking Plaquenil.[5]  *Id.*

Plaintiff returned one month later on March 28, 2003.  AT 221-22.  Dr. Veselova noted that plaintiff complained of "generalized achiness" and discomfort in his knees without significant swelling.  AT 221.  Dr. Veselova found that plaintiff was in no apparent distress.  *Id.*  She recommended that plaintiff start taking a small dose of Methotrexate.[6]  AT 221.  X-rays taken of plaintiff's chest, right knee, right shoulder, and scapula on April 2, 2003 were negative.  AT 223-27.

---

[5]  Plaquenil is used to treat the symptoms of rheumatoid arthritis.  *PDR Pocket Guide* at 1104-05.

[6]  Methotrexate is used to treat, *inter alia*, rheumatoid arthritis when other treatment has proven ineffective. *PDR Pocket Guide* at 834.

The record also contains a Physical Residual Functional Capacity ("RFC") Assessment form, which appears to have been completed by a non-physician disability analyst, "R. Friedlander." AT 180-87. In the form, it is indicated that plaintiff could lift and carry twenty pounds occasionally; lift and carry ten pounds frequently; and stand, walk, or sit about six hours in an eight-hour workday. AT 181. It was also indicated that plaintiff had unlimited abilities to push and pull; occasional postural limitations; should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc; and should avoid all exposure to hazards. AT 181-84.

**B.     Mental Condition**

On May 13, 2002, plaintiff's treating physician, Dr. Mitkoff, noted that plaintiff experienced auditory hallucinations. AT 200. Dr. Mitkoff noted that past medications had failed plaintiff and that the hallucinations were likely due to steroids, which he should try to taper. *Id.* Dr. Mitkoff referred plaintiff to "Pinnacle Psych." *Id.*

On June 12, 2002, Dr. Mitkoff noted that plaintiff was hospitalized "for several days when he was seen [at] Pinnacle Psych." AT 198. Dr. Mitkoff noted that plaintiff stated that "the voices were commanding him [and] he must obey." *Id.* It was also noted that plaintiff's dosage of Prednisone was reduced, which helped control the voices; however plaintiff complained of experiencing "aches all over." *Id.*

On August 5, 2002, Dr. Mitkoff noted that the auditory hallucinations "are not more prevalent" and there was "no steroid psychosis." AT 196. However, on September 23, 2002, Dr. Mitkoff noted that plaintiff experienced increased auditory hallucinations, which caused him to run from a security guard, resulting in a ticket from the police. *Id.* Dr. Mitkoff noted that plaintiff "is seeing Psych" and that the dosage of Prednisone had been reduced, which decreased the voices to "manageable levels." *Id.*

The record reflects that as of October 29, 2002, plaintiff was treating with Dr. Alarcon at Pinnacle Behavioral Health.[7]  AT 229-33; *see* AT 246.  After adjusting plaintiff's medications, plaintiff's auditory hallucinations "decrease[d] substantially;" however visual hallucinations increased.  AT 232.  Plaintiff was diagnosed as suffering from psychotic disorder with hallucinations due to Prednisone.  AT 230-33.

Dr. Veselova noted on February 28, 2003 that plaintiff claimed that he was unable to reduce his dosage of Prednisone because he experiences a "flare," which he defined as aches, and because "the voices in his head become louder."  AT 218.  She stated that sarcoidosis generally responds to smaller doses of Prednisone and it was unclear why plaintiff was unable to decrease his dosage.  AT 219.

On July 25, 2003, plaintiff was hospitalized at Samaritan Hospital due to attempting suicide.  AT 244-54.  It was noted that plaintiff reported that he was depressed regarding his medical condition and attempted suicide both six and twelve months earlier.  AT 246, 253.  He was diagnosed as suffering from severe recurrent major depression with psychotic features.  AT 247.  Plaintiff was treated and released four days later.  AT 244.

### III.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on August 30, 2001.  AT 15, 48-50.  The applications were denied on April 2, 2002.  AT 26-31.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on June 3, 2003.  AT 32, 260-83.  On October 15, 2003, ALJ Carl E. Stephan issued a partially favorable decision finding that plaintiff was not disabled prior to September 1, 2002, but thereafter was under a disability.  AT 15-24.  The

---

[7]  As discussed later, *see* Part VA, the record contains an undated progress note from Pinnacle Behavioral Health that suggests that plaintiff was seen at an earlier date.  AT 228.

Appeals Council denied plaintiff's request for review, making the ALJ's decision the final

decision of the Commissioner.  AT 4-7.

**IV.    ADMINISTRATIVE LAW JUDGE'S DECISION**

The Social Security Act (the "Act") authorizes payment of DIB and SSI to individuals

with "disabilities."  For both types of benefits, the Act defines "disability" as the "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A).

An ALJ must follow a five-step sequential evaluation process when considering a claim

for disability benefits.  20 C.F.R. §§ 404.1520, 416.920; *see also Perez v. Chater*, 77 F.3d 41, 46

(2d Cir. 1996).  The determination of a claimant's request for benefits should therefore proceed as

follows:

> At the first step, the agency will find non-disability unless the claimant shows that he
> is not working at a "substantial gainful activity."  At step two, the SSA will find
> non-disability unless the claimant shows that he has a "severe impairment," defined
> as "any impairment or combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."  At step three, the
> agency determines whether the impairment which enabled the claimant to survive step
> two is on the list of impairments presumed severe enough to render one disabled; if
> so, the claimant qualifies.  If the claimant's impairment is not on the list, the inquiry
> proceeds to step four, at which the SSA assesses whether the claimant can do his
> previous work; unless he shows that he cannot, he is determined not to be disabled.
> If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to
> consider so-called "vocational factors" (the claimant's age, education, and past work
> experience), and to determine whether the claimant is capable of performing other
> jobs existing in significant numbers in the national economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citations omitted).

In this case, the ALJ found at step one that plaintiff has not engaged in substantial gainful

activity since the alleged onset date of disability.  AT 17.  At the second step, the ALJ determined

7

that plaintiff's sacoidosis, back pain, asthma, seizures, and migraine headaches were severe.  AT 19.  At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the Regulations, but that as of September 1, 2002, plaintiff suffered from a severe psychiatric condition that meets the level of severity of the impairment contained in section 12.04 of Appendix 1.[8]  AT 22.   At the fourth step, the ALJ found that prior to September 1, 2002, plaintiff had the RFC to perform entry-level light work in an ordinarily clean environment that involved no exposure to unprotected heights and dangerous moving machinery.  AT 20.  The ALJ then found that plaintiff's conditions did not prevent him from returning to his past relevant work as a data entry clerk prior to September 1, 2002.  AT 20-23.  The ALJ concluded that plaintiff is not entitled to disability benefits prior to September 1, 2002, but was under disability since September 1, 2002 and thus is entitled to SSI benefits as of that date.  AT 22.

## V.      DISCUSSION

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence" or when a decision is based on legal error.  42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Id*. (citations omitted).  As noted, the Court also reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard.  *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

---

[8]  Section 12.04 relates to affective disorders.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04

Plaintiff argues (1) the ALJ erred by finding that plaintiff suffered from no severe mental impairment prior to September 1, 2002; (2) the RFC determination is not supported by substantial evidence; (3) the ALJ erred in evaluating plaintiff's credibility; and (4) the Commissioner failed to meet his burden at the fourth step of the sequential evaluation process.

**A.    Severity**

Plaintiff argues that the ALJ erred by failing to find that his psychiatric condition was severe prior to September 1, 2002. Dkt. No. 7 at 8-9. Plaintiff points out that as early as May of 2002, he complained of auditory hallucinations and was hospitalized for a psychiatric evaluation. *Id.*

As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities. *See* Part IV. An impairment is severe if it significantly limits physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. *Id.* The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

The severity analysis does no more than "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above the *de minimis* level, then further analysis is warranted. *Id.* Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

9

In this case, the ALJ found that plaintiff suffered from no severe mental condition prior to September 1, 2002.  AT 19, 22.  In so finding, the ALJ stated that there was "clear evidence of deterioration" in plaintiff's medical condition since September of 2002.  AT 22.  The ALJ explained that he "finds it significant that the claimant's primary care physician, Dr. Mitkoff[,] found that the claimant's psychiatric condition was [sufficiently] alarming at the time of the claimant's September 22, 2002 evaluation that Dr. Mitkoff referred the claimant for psychiatric evaluation."  *Id.*  However, Dr. Mitkoff's treatment notes clearly indicate that plaintiff was referred to "Pinnacle Psych" on May 13, 2002.  AT 200.  His notes also indicate that by June 12, 2002, plaintiff already had been hospitalized "when he was seen at Pinnacle Psych."  AT 198. Further, plaintiff was not seen by Dr. Mitkoff on September 22, 2002, which was the date noted by the ALJ; rather plaintiff was seen on September 23, 2002.  AT 195.  On that date, Dr. Mitkoff noted that plaintiff was already receiving psychiatric treatment.  *Id.*

The ALJ also explained that plaintiff "was evaluated in October [of] 2002 and at that time admitted that he was hearing voices telling him to harm himself and hinted that he would harm himself if his physical condition did not improve."  AT 22.  However, the progress note containing the statements described by the ALJ is undated.  AT 228.  Therefore, it is unclear when plaintiff was evaluated.  While defendant asserts that plaintiff was evaluated initially by Pinnacle Behavioral Health on October 29, 2002, Dkt. No. 13 at 10, the progress note from that date suggests otherwise.  The note states that plaintiff "*continues* with auditory hallucinations [and] . . . . He is *still* taking Prednisone."  AT 229 (emphasis added).  This suggests that plaintiff was evaluated before October 29, 2002.

In light of the foregoing, the Court finds that the ALJ's determination that plaintiff suffered from no severe psychiatric impairment prior to September 1, 2002 is not supported by

substantial evidence.  As noted, first, Dr. Mitkoff's progress notes state that plaintiff was referred for psychiatric treatment on May 22, 2002, which is several months earlier than that found by the ALJ.  AT 22, 200.  Second, Dr. Mitkoff's notes suggest that plaintiff was hospitalized for a psychiatric evaluation between May 22, 2002 and June 12, 2002.  AT 198, 200.  Supporting this notion is an intake form dated July 24, 2003 from Samaritan Hospital, which states that plaintiff's last psychiatric hospitalization was in June of 2002.  AT 250.  Third, Dr. Mitkoff's notes also state that plaintiff was already seeking psychiatric treatment on September 23, 2002, which is earlier than suggested by the ALJ.  AT 22, 195.  Accordingly, the matter must be remanded for a proper determination of the severity of plaintiff's mental impairment prior to September 1, 2002.

**B.**      **Credibility**

Plaintiff takes issue with the Commissioner's rejection of his complaints of disabling pain and limitations.  Dkt. No. 7 at 11-13.  Plaintiff argues that the credibility determination "was not based upon a full and fair evaluation of all of the evidence in the record."  *Id.* at 13.

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]"  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citation omitted).  The ALJ, however, retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Id.*  When a claimant's testimony regarding pain suggests a greater severity of impairment than can be shown by objective medical evidence, the ALJ must consider the following factors in evaluating a claimant's symptoms and complaints of pain: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating

and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; and (vi) any measures used to relieve pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).

When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987). Indeed, an ALJ "must consider the entire case record and give *specific reasons* for the weight given to the individual's statements." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4 (SSA July 2, 1996) (emphasis added). Moreover, the reasons for the credibility finding must be grounded in the evidence and articulated in the ALJ's decision. *Id.* It is insufficient for an ALJ to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.* Rather, the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

In this case, the Court finds that the credibility determination is unclear. The ALJ found that plaintiff "credibly testified that he suffers from sarcoidosis that causes joint and muscle pain, [and] glaucoma in both eyes and for which he must take [P]rednisone." AT 21. The ALJ then recited some of plaintiff's testimony regarding some of his other alleged conditions. AT 21-22. The ALJ then concluded in the "Findings" portion of the decision that plaintiff's "allegations

regarding his limitations are not totally credible for the reasons set forth in the body of the decision."  AT 22.

While an ALJ may find all, only some, or none of a claimant's allegations to be credible, SSR 96-7p, 1996 WL 374186, at *4, the ALJ must specify the weight given to the individual's statements and the reasons for that weight.  *Id.*  Here, the ALJ failed to make the required findings.  He concluded that plaintiff was not totally credible; yet he failed to state what allegations were not credible, as well as what weight he gave to plaintiff's statements, and the reasons for the weight given to those statements.  AT 21-22.  Defendant asserts that the "ALJ found that plaintiff's alleged symptoms were not credible, at least with respect to the time period prior to September 1, 2002."  Dkt. No. 13 at 14.  However, the ALJ specified no time period with regard to plaintiff's allegations.  Accordingly, remand is required due to the ALJ's failure to specify what allegations he found not credible, the weight given to plaintiff's statements, and the reasons for the weight given to those statements.  *See Brandon*, 666 F. Supp. at 608; SSR 96-7p, 1996 WL 374186, at *4.

## C.     Residual Functional Capacity

### 1.     Narrative Discussion Requirement

Plaintiff challenges the RFC determination, arguing that it is not supported by substantial evidence.  Dkt. No. 7 at 9-11.

RFC is defined as:

> "what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2) (SSA July 2, 1996)).  In making an RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, and symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).  Pursuant to SSR 96-8p, the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  SSR 96-8p, 1996 WL 374184, at *7.

In this case, the ALJ concluded that prior to September 1, 2002, plaintiff had the RFC to perform entry level light work[9] in an ordinarily clean environment that did not involve exposure to unprotected heights or dangerous moving machinery.  AT 20.  In making the RFC determination, the ALJ discussed the findings made by the consultative examiners, Dr. Balagtas and Dr. Chhabra.  *Id.*  The ALJ also discussed findings set forth in the RFC assessment form completed by R. Friedlander.  AT 20.  The ALJ then concluded that "the limitations found by the state agency non-examining physician [in the RFC assessment] are well supported by the objective evidence [in] the record."  *Id.*

While the ALJ discussed the record to some extent, it is unclear on what specific evidence the ALJ relied in making the RFC determination.  The ALJ failed to describe *how* the evidence supports each conclusion.  To the extent that the ALJ relied on the findings made by the consultative examiners, the ALJ was not permitted to infer, without additional information, that

---

[9]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

plaintiff was able to perform a limited range of light work based on the examiners' vague findings.  *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (finding that consultative examiner's use of the terms "moderate" and "mild," without additional information, did not permit the ALJ to make the necessary inference that the plaintiff can perform the exertional requirements of sedentary work) (citing *Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1988)).

To the extent that the ALJ relied on the findings set forth in the RFC assessment completed by R. Friedlander, the Court notes that this individual appears to be a non-physician disability analyst whose exact qualifications and identity are unknown to this Court.  *See* AT 77, 85-86, 187.  Accordingly, the Court is unable to conclude that the ALJ's RFC determination is supported by substantial evidence and remands the matter for a proper evaluation of plaintiff's RFC.

It is noted that the ALJ's RFC determination contradicts his finding that plaintiff testified credibly regarding the effects of sarcoidosis.  *See* AT 21.  Plaintiff testified that sarcoidosis causes joint pain, muscle pain, and glaucoma.  AT 269.  He stated that glaucoma affects his vision by causing periodic fuzziness and blurriness, particularly in his left eye, and that his ability to read is affected to the extent that at times he must "wink" or place his hand over his left eye in order to read with the right eye.  AT 273.  Thus, it is unclear how the ALJ determined that plaintiff retained the RFC to perform a limited range of light work with no visual limitations, yet also determined that plaintiff credibly testified to suffering from joint pain, muscle pain, and limited vision due to glaucoma.  On remand, the ALJ must properly consider plaintiff's symptomology while assessing his RFC.

### 2.    Duty to Develop Record

As an extension of his RFC challenge, plaintiff argues that the ALJ failed to fulfill his duty to develop the record.  Dkt. No. 7 at 10.  He claims that the ALJ failed to contact his treating sources for "clarifying evidence" regarding his ability to do work-related tasks.  *Id.*

An ALJ, unlike a trial judge, must affirmatively develop the record in light of the "essentially non-adversarial nature of a benefits proceeding," even if the claimant is represented by counsel.  *Tejada*, 167 F.3d at 774 (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) and *Echevarria v. Secretary of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).  The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician"[10] provisions in the regulations. *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002).  The regulations thus provide that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available."  20 C.F.R. §§ 404.1512(e), 416.912(e).  Moreover, "[t]here is ample case law suggesting that an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician in order to afford the claimant a full and fair hearing."  *Devora*, 205 F. Supp. 2d at 174 (collecting cases).

In this case, between July 24, 2001 and September 1, 2002, which is the period of time being challenged in this action, plaintiff treated with Dr. Mitkoff.[11]  *See* Dkt. No. 7 at 2.  While the record contains Dr. Mitkoff's treatment notes, there is no detailed functional assessment. Moreover, there is no clear indication that the ALJ contacted Dr. Mitkoff in order to obtain such an assessment.  Dr. Mitkoff's opinion is of particular import since he is one of plaintiff's treating physicians; as such, his opinion is entitled to controlling weight as long as it is well supported and

---

[10]  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

[11]  The only other documents in the record corresponding to this period of time are the reports from the consultative examiners and two notes from Diagnostic & Interventional Pain Management and Rehabilitation Services dated August 2, 2001 and September 27, 2001.  AT 97-99.  The former note was completed by an unknown source.  AT 98-99.  The latter note states that plaintiff was a "no show."  AT 97.

consistent with other substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  This is particularly crucial in light of the lack of assessments describing plaintiff's specific functional abilities from any treating physician.  Accordingly, the ALJ had a duty to contact Dr. Mitkoff  in order to obtain a more detailed opinion, but the ALJ failed to fulfill this duty by making no such contact.  Therefore, on remand, the ALJ shall contact Dr. Mitkoff for a more detailed opinion regarding the period of time in question.[12]

### D.    Past Relevant Work

Plaintiff argues that the ALJ erred by finding that he can perform his past relevant work. Dkt. No. 7 at 13.  "[I]n order to determine at step four whether a claimant is able to perform [his] past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Kerulo v. Apfel*, No. 98 Civ. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted); *see also* SSR 82-61, 1982 WL 31387 (SSA 1982); SSR 82-62, 1982 WL 31386 (SSA 1982).  Once the demands of the claimant's past relevant work are ascertained, the ALJ must identify the claimant's ability to perform the specific work-related abilities on a function-by-function basis.  SSR 96-8p, 1996 WL 374184, at *1.  Similarly, as provided in SSR 82-62:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

---

[12] Plaintiff also argues that the record contains no medical records from his treating rheumatologist. Dkt. No. 7 at 9.  Plaintiff does not identify to whom he is referring.  However, the record contains progress notes from Dr. Veselova, who was previously identified by plaintiff's counsel as plaintiff's "treating rheumatologist." AT 217-27. Thus, to the extent that plaintiff was referring to Dr. Veselova, this claim is unavailing.

SSR 82-62, 1982 WL 31386, at *4.

In this case, a review of the decision shows that the ALJ failed to identify the physical and mental demands of plaintiff's past relevant work, and failed to identify plaintiff's ability to perform the specific work-related abilities on a function-by-function basis.  Instead, the ALJ simply stated that plaintiff had the RFC to perform a limited range of light work; that plaintiff's past relevant work was as a data entry operator; and that therefore plaintiff was not under a disability.  AT 20-21.  The ALJ's conclusory findings do not meet the requisite standards for findings of fact.  Moreover, the Court is remanding for a re-evaluation of plaintiff's RFC.  *See* Part VC.  Accordingly, the Court is unable to conclude that the record provides substantial evidence to support the ALJ's finding that plaintiff is capable of returning to his past relevant work, making remand appropriate.  On remand, once the demands of plaintiff's past relevant work are ascertained, the ALJ must identify plaintiff's ability to perform the specific work-related abilities on a function-by-function basis.

## VI.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[13] for further proceedings consistent with the above; and it is further

---

[13]  Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit.

**IT IS SO ORDERED.**

Dated: February 27, 2008
     Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

19